# SUPREME COURT.

MATTHEW D. MANN, et al. agt. THE CITY OF UTICA & another.

It has been settled by authority that an action *in equity* may be maintained to pre-
vent a *cloud* to be cast upon real estate, as well as to remove a cloud already
created.

Consequently an action to restrain a city from proceeding to sell real estate under a
prior assessment, which is claimed to be irregular under the city charter, is prop-
erly brought by the owner of the property.

And where, pending the litigation in such action, it is apparent that such irregulari-
ties exist, and the defendants (the city) apply to and procure an act to be passed
by the legislature, by which the assessment is hereby confirmed and declared to
be of the same force and effect as if no informality or error had occurred in the
making of said assessment, and the amount assessed shall be a lien on the prop-
erty asssessed:

*Held,* that the clear purport and intent of the act was to validate and make good
the assessment, and charge the assessment upon the lands of the plaintiffs as well
as the other owners of property benefited.

The act referred to is entitled as follows : " An act to confirm an assessment for
the expense of paving Broad street, in the city of Utica," passed May 16, 1872.
This act is not *unconstitutional and void.* Because, 1st. It is, as alleged, contrary
to section 1 of art. 1 of the constitution.  2d. Because, as alleged, it is contrary
to section 6 of art. 1.

Neither is the act void, because, as alleged, it is a private and not a public act, and
embraced more than one subject.

Nor is the act invalid, because, as alleged, it is *retroactive,* or an *ex post facto*
law.

The plaintiffs having established, by the admissions of the pleadings and proofs,
that when the action was commenced they were entitled to some relief from the
court, the complaint ordered dismissed with taxable costs of the plaintiffs, recov-
able of the defendants.

*Oneida Special Term, October* 1872.

THIS action is brought by two plaintiffs, owners, as ten-
ants in common, of two lots on the north side of Broad
street, in the city of Utica, against the city and its treasurer,
to declare void all assessments made by the city on said lots
to defray the expenses of paving said street and expenses
connected therewith, and to restrain the defendants from

enforcing the assessment by leasing the premises pursuant to the provisions of the city charter.

The answer contains denials of some of the allegations of the complaint with other defenses.

This action was commenced 30th January, 1872, and a demurrer was interposed to the complaint, and in April, 1872, at a special term, held by Justice MORGAN, the demurrer was overruled.

The legislature, by an act passed May 16th, 1872, confirmed the assessment, and declared "the amount assessed" shall be a lien on the property assessed.

C. D. ADAMS *and* JOSEPH R. SWAN, JR., *for plaintiffs.*
S. M. LINDSLEY *and* CHARLES MASON, *for defendants.*

HARDIN, *J.*—In the assessment proceedings taken by the common council of the city, the lands belonging to the plaintiffs are described, and the assessment is made as though A. C. Miller was the owner or occupant of the property. His name appears upon the assessment, signed by the mayor, Oct. 7th, 1871, preceding the description of the property of the plaintiffs, and was carried in the same manner into the collector's warrant issued to collect the assessment. He was neither owner or occupant, and refused to pay the assessment.

The defendants then commenced proceedings to sell the property described in the complaint, and were about to make such sale when they were restrained by a preliminary injunction issued in this action. The assessment not having been made to the "owner or occupants" of the lots was void, and hence did not bind Miller or these plaintiffs, and could not be enforced out of their property legally (8 *Barb.*, 493 ; 23 *N. Y.*, 281 ; 18 *Barb.*, 393 ; 43 *N. Y.*, 107, 118).

It is claimed by the plaintiffs that the assessment is invalid, because there was no "plans and specifications" filed with the clerk prior to the passage of the resolution of the

4th of February, 1870, according to the requirements of §99 of the charter.

The first publication was the 9th of February, 1870, of notice that applications were pending, and that final action would be had by the common council on the evening of the 18th February. 1870.

Then no plans and specifications had been filed with the clerk, and the surveyor's plan of the work was actually filed 14th February.

It is, therefore, insisted, that the final action on the 18th February, 1870, was not in compliance with the provisions of the charter.

The first part of §99 confers upon the common council generally power to cause any street to be graded, leveled, paved, or repaved, as it shall deem necessary. Following are the words in reference to causing a "plan and accurate specifications to be prepared and filed with the clerk." There are no words of express prohibition against taking the subsequent steps prior to the filing of such plan and specifications.

But the language used seems to be mandatory, in so far as it requires " the plan and accurate specifications" prior to the passage of any ordinance for such work (46 *N. Y.*, 42; 47 *N. Y.*, 560; *See also, sec.* 105 *of charter*).

Every provision of a statute designed for the protection or security of persons whose property is sought to be taken, must be substantially complied with before the proceedings will be upheld (43 *N. Y.*, 107).

The plaintiffs allege other irregularities and informalities in respect to the assessment in question, but it is not necessary to consider them in detail; they are enumerated in the pleadings.

The defendants' learned counsel has submitted an elaborate argument against the right of the plaintiffs to maintain an action in equity to set aside the proceedings already had and to prevent those which were being and about to be

taken by the defendants at the time of the commencement of the action.

It has been settled by authority that an action in equity may be maintained to prevent a cloud to be cast upon real estate, as well as to remove a cloud already created (5 *Paige*, 493 ; 6 *Paige*, 292).

By section 49 of the charter it is provided: "The tax lists filed with the clerk or delivered to the treasurer, shall, in all courts and places, be evidence of the imposition of the taxes therein contained, and the taxes therein assessed upon, or in respect to any real estate shall be liens thereon for two years from the time the tax lists are filed with the clerk."

The assessment complained of by the plaintiffs may be said to be " in respect to" their real estate, and to be declared to be " a lien thereon for two years."

By section 54 of the charter it is provided that if the taxes remain unpaid, the treasurer shall publish a notice of sale for eight weeks, that the lands assessed, " or in respect to which they are imposed, will be sold to the person who shall take the same for the shortest period."

Proceedings under this section had been taken when this action was commenced, for the purpose of selling the plaintiff's lands.

Section 55 of the charter provides that : "Upon making any sale of real estate under the provisions of the last preceding section, the treasurer shall execute two certificates of the fact    *    *" containing a description of the property sold    *    *    stating the particular tax or assessment    *    * for which the sale was made, and providing that if the same shall not be redeemed within fifteen months, the purchaser will be " entitled to a deed thereof."   One of the certificates shall be filed with the clerk, and one delivered to the purchaser.

" Such certificate shall be presumptive evidence of the facts therein contained."   Then follows section 58, which provides that if the lands so sold shall not be redeemed,

" the treasurer shall execute to the purchaser or purchasers * * a deed or deeds thereof, or of the parts unredeemed for the period for which it shall have been purchased, " containing a description of the premises, of the fact of the assessment, advertisement and sale, the date of the sale, the price for which the premises were sold, and the time of the service of notice to redeem, which deed or deeds may be recorded as a lease of real estate, and shall be presumptive evidence in all courts and places that such tax and assessment was legally imposed, and that the proceedings to authorize such sale was duly taken, and· in all respects correct, and such grantee may obtain possession thereof in the manner prescribed by law in relation to persons holding over demised premises * * and shall have, hold and enjoy the said premises so sold during the term for which the same were granted * * free and clear from all liens, claims and demands· of any other owner or occupant of the same."

It appears quite conclusively by the provisions quoted, that the declaration and deed are made presumptive evidence of the regularity of the proceedings, and that " such tax was legally imposed," and the proceedings " duly taken, and in all respects correct; and that to avail of some of the objections existing as to said assessment, proof of facts extrinsic and *aliunde* of the proceedings is necessary, and therefore the plaintiffs, according to the authorities applicable to this case, were entitled to maintain an action in equity, to remove and prevent a cloud upon their premises, and to restrain the threatened sale thereof (*Mayor &c.* agt. *Meserole,* 26 *Wend.,* 132; *Van Doren et al.* agt. *the Mayor of New York,* 9 *Paige,* 358; *Matthews* agt. *the Mayor of New York,* 14 *Abb.,* 209; *Lewis* agt. *the City of Buffalo,* 29 *How.,* 335; *Scott* agt. *Onderdonk,* 14 *N. Y.,* 9; *Heywood* agt. *the City of Buffalo,* 14 *N. Y.,* 534; *Hatch* agt. *the City of Buffalo,* 38 *N. Y.,* 276; *Allen* agt. *the City of Buffalo,* 39 *N. Y.,* 386; *Crook* agt. *Andrews,* 40 *N. Y.,* 547; *Mas-*

*terson* agt. *Hoyt,* 55 *Barb.,* 520; *Tilden* agt. *the Mayor of New York,* 56 *Barb.,* 360).

But since this action was commenced there has been a legislative enactment in respect to the assessment authorized by the common council, which must be considered in determining whether the plaintiffs are entitled to any relief, and if any, to what extent that relief shall be given.

It is a familiar rule in equity cases which permits courts to take into consideration subsequent events, happening after the commencement of the action in equity, and determining what relief shall be granted, especially where part of the relief asked for is an injunction from the court to restrain parties (*Lyon* agt. *Brooks,* 2 *Edws. Ch.,* 110; *Willis* agt. *Chipp,* 9 *How.,* 568; *Carpenter* agt. *Bell,* 19 *Abb.,* 263; *Beebe* agt. *Dowd,* 22 *Barb.,* 259; 1 *Barb. Ch.,* 140).

The act referred to is found in the 2d vol. of session laws of 1872, page 1,786, chapter 741, and is entitled as follows: "An act to confirm an assessment for the expense of paving Broad street in the city of Utica." This act was passed May 16, 1872, and is as follows:

"Sec. 1. The assessment for the expense of paving a portion of Broad street in the city of Utica, made and confirmed by the common council of said city, September twenty-second, 1871, is hereby confirmed and declared to be of the same force and effect as if no informality or error had occurred in the making of said assessment, and the amount assessed shall be a lien on the property assessed."

Prior to the passage of the act the common council, in virtue of the provisions of the charter, possessed the power, if exercised in accordance with the provisions of the charter, to make an assessment for the expenses of grading the street; that power was improperly exercised in respect to the plaintiff's property.

The work had been performed, the expenses had been incurred, and the city was liable to pay for the same. The

plaintiffs, in justice, should bear their proper share of the expenses, and the defendants were attempting to enforce the collection of some $2,3.10 from the plaintiffs or their property.

Informalities and defects, and insufficiencies existed in those proceedings, and an application was made to the legislature, and the act in question was passed.

That assessment was "confirmed and declared to be of the same effect as if no informality or error had occurred."

The clear purpose and intent of the act was to validate and make good the assessment in question, and to charge the assessment upon the lands of the plaintiffs, as well as the other owners of property benefitted by the improvements, and named in the assessment made by the common council.

The act declares the "amount assessed shall be a lien on the property assessed."

The items for a well, and for "superintending the work, &c.," included in said "amount" so assessed, do not render inoperative or invalid the act, nor can they be held to vitiate the assessment. This is true even if it be assumed that the charter expressly forbid the payment for such additional or extra items of expenditure (19 *N. Y.*, 116; *Brewster* agt. *City of Syracuse*, 35 *N. Y.*, 467).

The learned counsel for the plaintiffs insists that the act of the legislature is unconstitutional and void: 1st. Because it is contrary to section 1 of article 1 of constitution. 2d. Because contrary to section 6 of article 1

The law must be held valid, notwithstanding the objections stated, and the ingenious argument submitted in support thereof. The legislature have exercised the taxing power, and apportioned the tax; the act was passed in the exercise of the taxing power possessed by the legislature, and private property is not taken in virtue of the right of eminent domain.

The authorities leave no room for doubt or discussion by

this court upon the objections above stated (*Providence Bank* agt. *Billings*, 4 *Peters*, 514; *Thomas* agt. *Leland*, 24 *Wend.*, 65; *Griffen* agt. *the Mayor of B.*, 4 *Coms.*, 419; *Town of Guilford* agt. *Sups. Chenango*, 3 *Kern.*, 143; *Brewster* agt. *City of Syracuse*, 19 *N. Y.*, 116; 24 *Barb.*, 232; 31 *N. Y.*, 574; *Crowell* agt. *Lawrence*, 41 *N. Y.*, 123; *Howell* agt. *City of Buffalo*, 37 *N. Y.*, 267; *People* agt. *Osborne*, 57 *Barb.*, 663; *Gordon* agt. *Comes*, 47 *N. Y.*, 608.

It is insisted that the act in question is void because it is a private and not public act, and that it embraces more than one subject.

The substance of the act is to confirm the assessment, and to declare the amount thereof a lien upon the lands or " property assessed."

There is but one subject matter embraced in the act, that being the " assessment," and declaring the effect thereof. The title sufficiently indicates the subject matter; the object of the enactment. The legislature has some discretion in respect to the degree of particularity as to the expression of the objects of the enactment in its title (*Ins. Co.* agt. *New York*, 4 *Seld.*, 241; *Brewster* agt. *City of Syracuse*, 19 *N. Y.*, 117).

In the case last cited the title was less particular than the one before the court, and the act embraced the assessment and collection of a tax, and was upheld (*The People* agt. *Hules*, 35 *N. Y.*, 253).

The declaration of the law in the case is merely for the purpose of furthering the collection of the assessment (*Gordon* agt. *Comes*, 47 *N. Y.*, 615).

It was urged that the act should be held invalid, because it is retroactive.

The legislature declared, under the taxation power, that a certain assessment " is hereby confirmed *  *  * and shall be a lien upon the property assessed."

Full effect may be given to it by holding that from the

time of the passage of the act the assessment existed and was valid, and thenceforth became, and was, " and shall be a lien upon the property assessed."

But the act does not interfere with any obligations resting in contract, nor does it in terms take away any vested rights or contain any *ex post facto* provisions.

It apportions upon the plaintiffs their share of the expenses incurred in paving the street in the act named, and presumptively, a sum is charged upon their property equal to the benefit derived by them from the public improvement made necessarily affecting their property.

The plaintiffs, certainly, had no vested rights which gave them in justice or in law any good ground to maintain their enjoyment of the benefits conferred without contributing their just share to the expenses of causing the improvement.

There was only wanting a remedy to enforce payment by the plaintiffs of their just proportion of the expenses of the improvement of Broad street.

It was said in *The City of Syracuse* agt. *Davis* (16 *Barb.*, 188), by the general term in this district, " That statutes were valid which gave remedies when none existed before through defects that would have been fatal had the legislature not interfered and given a remedy by curing interfering irregularities."

In *Locke* agt. *New Orleans* (4 *Wallace*, 172), it was held, " A statute which simply authorizes the imposition of a tax, according to a previous assessment, is not retrospective."

The same case approves of *Calder* agt. *Buell* (8 *Dallas*, 390), when a very elaborate opinion was delivered upon respective and *ex post facto* laws.

In *Witherspoon* agt. *Duncan* (4 *Wallace, N. S. R.*, 210), it was held that " a state can declare that a tract of land shall be chargeable with taxes no matter who is the owner, or in whose name it is assessed."

In discussing and declaring the unrestricted, and it may be said almost absolute, taxing power of the legislature in the

case in 31 *N. Y.*, 584, DENIO, *J.*, says : " It is manifestly proper that the tax-payers should have notice of the imposition proposed to be laid upon them.    *    *    But it is for the legislature to determine and prescribe in every case what shall be sufficient, there is not, that I am aware of, any constitutional provision bearing on the subject.    *    *    * The power of the legislature to regulate and change the forms of proceeding in all cases when no vested rights have been acquired under existing law, cannot be questioned." (*Stocking* agt. *Head*, 3 *Denio*, 274 ; *Goold* agt. *Morse*, 1 *Kern.*, 281 ; 8 *Mass.*, 468).

PORTER, *J.*, in *People* agt. *Mitchell*, (35 *N. Y.*, 552), says : " Precise purpose and effect of the confirmatory legislation, of which the defendants complain, was to cure all such defects, as those on which they rely, to justify them in disobeying the statute.    It was within the scope of legislative authority to modify the limitations and restrictions in the antecedent act on this subject    *    *    to dispense with prior conditions."

The act now under consideration cannot be declared invalid, for the reason that it contains provisions supposed to be retroactive.

It was passed before an issue of fact was joined in this case, and is alleged by the defendants, in their answer, as ample authority for sustaining the assessment upon the plaintiffs' property for $2,300 for their share of the expenses incurred by the city in the improvement of Broad street.

The conclusions cannot be reached that the legislation has transcended its constitutional power, and, therefore, force and effect must be given to the enactment.

The decree in this case will, therefore, contain a provision declaring the assessment valid and a lien upon the property so assessed.

But as the plaintiffs have established by the admissions of the pleadings and proofs, that when this action was commenced they were entitled to some relief from this court,

the complaint will be dismissed with taxable costs of the plaintiffs recoverable of the defendants.

By section 306 of the Code, the costs are in the discretion of the court, and the discretion is exercised as above stated.

The judgment will also contain a provision dissolving the preliminary injunction and a declaration that the plaintiffs are not entitled to the permanent injunction prayed for in their complaint, and that the tax stated in the complaint has been apportioned upon the lands of the plaintiffs, and shall be a lien upon the property assessed.